**FILED**
**Oct 22, 2025**
**11:35 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **THADDEUS FORREST,** | ) | **Docket No. 2025-60-3186** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CONCRETE STRUCTURES, INC.,** | ) | **State File No. 21779-2025** |
| **Employer,** | ) | |
| **And** | ) | |
| **BUSINESS FIRST INS. CO.,** | ) | |
| **Carrier.** | ) | **Judge Joshua Davis Baker** |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on September 30, 2025, to consider Mr. Forrest's requests for temporary-total disability and medical benefits stemming from a workplace accident when a plywood and metal form for erecting a concrete wall fell on his leg, fracturing his femur. He also seeks attorney's fees from Concrete Structures for the wrongful denial of this claim. Concrete Structures denied that Mr. Forrest is entitled to any benefits due to a cancer diagnosis that reduced the strength of his femur.

For the reasons below, the Court rejects Concrete Structures defense and awards Mr. Forrest all the requested benefits except attorney's fees.

### Claim History

On April 2, 2025, several connected plywood and metal forms fell on Mr. Forrest's head and left leg. The accident resulted in a spiral, femoral fracture. Mr. Forrest was taken to the hospital.

Medical staff there noticed a suspicious lesion on imaging and called for an orthopedic surgeon specializing in orthopedic oncology, Dr. Ginger Holt. Dr. Holt diagnosed "pathological fracture of femur due to neoplastic disease." Two other physicians also noted that the femur fracture was likely due to cancer. The day after the accident, Dr. Holt surgically repaired Mr. Forrest's leg.

In her deposition, Dr. Holt testified she observed during surgery "a 4.5cm lytic lesion in the bone." She biopsied the area and then a removed the tumor, followed by a fracture reduction and intramedullary nail fixation. The pathology report showed "a tumor called myeloma, or plasma cell neoplasm." The tumor was within the fracture site, she said, explaining that "[o]ver time, [lytic lesions] can allow or create fractures" and can weaken the bone. She continued, "A thin bone could be at risk of fracture."

Although the lesion contributed to the fracture, Dr. Holt maintained "getting hit by this wall . . . caused his fracture," insisting "it was a greater than 50 percent chance that wall contributed to his fracture." She also answered "yes" to "whether or not [the wall] caused this fracture, more than 50 percent in causing his injuries, considering all causes[.]" And when asked directly if "between the force from whatever happened at the work site and the weakened bone at that area, what was the primary cause of the fracture?," she responded, "The force that happened at the work site."

Dr. Holt explained that the falling wall hit him and/or caused him to brace himself "with more than regular body force" that is required for ordinary daily activities. In other words,

> [A] patient who, although they have a lytic bone lesion, has no pain, [that means] the bone is handling the stress it needs to handle . . . what it does every day." She pointed out, "[H]e wasn't having any pain with all of his heavy labor and activity. So[,] his bone was structurally sound and strong enough to do all the things it needed to do. But [then] a force hits it[,] and it can't.

Dr. Holt said Mr. Forrest needs chemotherapy and specialized care in medical oncology to ensure the bone heals properly. Concrete Structures did not provide a panel of oncologists or any other doctors for post-surgical care. It also did not send these recommendations to utilization review.

Instead, Concrete Structures denied Mr. Forrest's claim the same day he was injured, but it did not complete the denial form until April 29. The Notice listed the reason for denial as "the condition is not greater than 50% related to work." Previously, Concrete Structures paid temporary disability at a weekly compensation rate of $575.01.

To support the denial, Concrete Structures relied on a medical records review report from Dr. Robert Holladay, an orthopedic surgeon. Dr. Holladay determined that Mr. Holt's underlying "neoplastic disease," here myeloma, primarily caused the injury. Importantly, he wrote the following:

The clinical records consistently documented that the fracture occurred through an area of abnormal, weakened bone due to an underlying neoplastic process. In such cases, pathologic fractures occur in bones structurally compromised by malignancy, where minimal or even no trauma can result in fracture. Were it not for the neoplastic disease, it is unlikely that the reported mechanical trauma alone would have resulted in such a complex femoral shaft fracture.

Dr. Holt disagreed with Dr. Holladay's opinion.

At trial, Mr. Forrest said he had no problem working on the date he was hurt. Afterward, he could not. He also explained that he has not recovered from the accident and needs post-operative care to ensure proper healing.

As for an attorney's fee, Mr. Forrest's counsel offered an affidavit detailing his work on the case and requesting a fee of $17,430. Concrete Structures opposed the fee amount.

## Factual Findings and Legal Conclusions

To receive benefits at an expedited hearing, Mr. Forrest must prove he is likely to prevail at a final hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

This expedited hearing concerns three distinct requests for relief: medical treatment, temporary disability benefits, and an attorney's fee. Specifically, Mr. Forrest seeks post-operative care for his femur fracture. He also seeks temporary disability benefits from April 17 to the present and continuing, and fees.

### *Additional treatment*

Considering medical benefits, it is well-settled that "an employer takes an employee 'as is' and assumes the responsibility of the employee having a preexisting condition aggravated by a work-related injury that might not affect an otherwise healthy person." *Bradshaw v Jewell Mechanical, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 16, at *15 (June 4, 2015) (internal citations omitted). "An employer is liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case." *Id*. at *16

Here, the parties presented competing expert medical opinions on the cause of Mr. Forrest's femur break. When faced with competing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of

that information by other experts." *Bass v. The Home Depot U.S.A. Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Weighing the *Bass* factors and Mr. Forrest's statements, the Court finds Dr. Holt's opinion more persuasive and adopts it. On qualifications, the Court finds that Dr. Holt's qualifications exceed Dr. Holladay's in this case. While both are orthopedic surgeons, Dr. Holt specializes in orthopedic oncology; Dr. Holladay does not. As for their examinations' circumstances, Dr. Holt saw and treated Mr. Forrest when the injury occurred. Dr. Holladay never saw him. Mr. Forrest's own statements about his ability to work without limitation before the accident supports Dr. Holt's conclusion that the falling barrier, not the underlying myeloma, caused the femur fracture.

Further, Dr. Holladay's opinion does not precisely discredit Dr. Holt's. In his opinion, Dr. Holladay wrote, "Were it not for the neoplastic disease, it is unlikely that the reported mechanical trauma alone would have resulted in such a complex femoral shaft fracture." Because an employer takes an employee as it finds him, whether the preexisting myeloma weakened the femur or not is immaterial.

Turning to specific treatment, Dr. Holt has recommended oncological treatment to ensure Mr. Forrest's femur heals properly. When considering what treatment is necessary due to a preexisting condition, the employee has the separate burden of proving that "the work accident was the primary cause of the need for whatever medical treatment has been recommended. In other words, the employee must establish through expert medical evidence that the work accident was more than fifty percent the cause of the need for the treatment being recommended." *Edwards v. Peoplease, LLC*, 2024 TN Wrk. Comp. App. Bd. LEXIS 23, at *15-16, *appeal docketed*, (July 2, 2024).

Mr. Forrest carried this burden, as Dr. Holt said he needed the treatment to ensure proper healing of the femur. While Mr. Forrest would likely have needed treatment for myeloma even if the work accident had not occurred, this likelihood is immaterial because he did fracture his femur at work. Logically, had Mr. Forrest not broken his femur at work, the oncological treatment would not be needed to ensure healing. So, the Court holds that Concrete Solutions must provide Mr. Holt a panel of oncologists.

*Temporary disability*

To qualify for temporary disability benefits, "an employee must establish: (1) that he or she became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability." *Smith v. TrustPoint Hosp., LLC*, 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-22 (Jan. 6, 2021).

Mr. Forrest would likely prevail at a final hearing in proving all three elements. First, he became disabled from working when the falling barrier broke his femur. Second, as Dr. Holt stated, the falling barrier caused his femur to break. Third and finally, Dr. Holt testified that Mr. Forrest has been unable to work since the accident and his inability to work continues.

The Court holds that Concrete Structures owes Mr. Forrest temporary disability benefits from April 17, 2025, through the date of this order—27 weeks. Multiplying 22 weeks by Mr. Forrest's weekly compensation rate of $575.01 yields an accrued benefit of $15,525.27. Biweekly payments shall continue until the treating physician ends all active medical treatment. *Id.* § 50-6-207(1)(E).

*Fees*

Lastly, the Court turns to the requested attorney's fee under section 50-6-226(d)(1)(B) for Concrete Structures alleged unreasonable denial of benefits. A decision to award attorney's fees and expenses at an interlocutory stage of a case should be made only in extremely limited circumstances. *Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at \*29 (Jan. 30, 2018). The Court holds that such limited circumstances are not present here.

**IT IS ORDERED** as follows:

1.  Concrete Structures shall pay Mr. Forrest $15,525.27 in temporary disability benefits in a lump sum. It shall also pay ongoing temporary disability benefits until Mr. Forrest reaches maximum medical improvement.

2.  Concrete Structures shall offer Mr. Forrest a panel of orthopedic oncologists from which he may select a treating physician for reasonable and necessary treatment for this injury under 50-6-204.

3.  The Court further awards Mr. Forrest's counsel a fee of 20% of the temporary total disability benefits or $3,105.05, to be paid from the accrued temporary benefits awarded.

4.  A status hearing is set for **Tuesday, February 10, 2025, at 9:00 a.m. Central Time.** You must call 615-741-2113 or 855-874-0474 to participate.

5.  Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by section 50-6-239(d)(3).

**ENTERED October 22, 2025.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

**Exhibits:**

1. Affidavit of Thaddeus Forrest
2. Medical records
3. First Report of Injury
4. Notice of Denial
5. Wage Statement
6. Depo transcript of Dr. Ginger Holt

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on October 22, 2025.

| Name | Mail | Fax | Email | Service sent to: |
|------|------|-----|-------|------------------|
| Peter Frech, Employee's attorney | | | X | pfrech@forthepeople.com |
| Benjamin Norris, Employer's Attorney | | | X | bnorris@eraclides.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*